## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      **Plaintiff,**

**v.**                                   **No.**    **12-cr-2653 RB**
                                                   **16-cv-0671 RB/SMV**

**GILBERT CONTRERAS,**

      **Defendant.**

### MAGISTRATE JUDGE'S
### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Gilbert Contreras's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 34; CV Doc. 1], filed June 24, 2016. The government responded on October 11, 2016. [CR Doc. 43; CV Doc. 8]. Mr. Contreras replied on November 4, 2016. [CR Doc. 46; CV Doc. 11]. The Honorable Robert C. Brack, United States District Judge, referred this matter to me for analysis and a recommended disposition. [CR Doc. 36; CV Doc. 2]. Having considered the briefing, the relevant portions of the underlying criminal record, the relevant authorities, and being otherwise fully advised in the premises, I find that Mr. Contreras's underlying conviction for violating NMSA 1978 § 30-16-2 qualifies as a crime of violence under the "force clause" of U.S. Sentencing Guidelines Manual ("Guidelines") § 4B1.2(a). I further find that his underlying conviction qualifies as an enumerated offense in the commentary accompanying § 4B1.2(a). Because I find that Mr. Contreras was not sentenced under the "residual clause" of § 4B1.2(a), I need not address his arguments regarding that clause. His motion should be denied.

## Background

According to his Presentence Report ("PSR"), on October 18, 2012, Mr. Contreras was charged with one count of being a felon in possession of a firearm and ammunition, 18 U.S.C. §§ 922(g)(1), 924(e).  PSR at 4.  On November 30, 2012, he pleaded guilty to the offense.  *Id.* United States Probation and Pretrial Services submitted his PSR to the Court on February 14, 2013; the PSR was revised on March 15, 2013, and again on July 22, 2013.  *Id.* at 1; Second Addendum to the PSR at 1–2.  The PSR provided that, pursuant to Guidelines § 2K2.1(a) (the provision that sets out the sentencing guideline for § 922(g)(1) offenses), Mr. Contreras had a base offense level of 20 because he had "sustain[ed] at least one felony conviction of either a crime of violence or a controlled substance."  *Id.* at 7–8.  The PSR indicated that Mr. Contreras's prior robbery conviction, NMSA 1978, § 30-16-2, met "the federal definition of crime of violence," as set out in § 4B1.2(a) of the Guidelines.  *Id.*  After an upward adjustment based on the specific characteristics of his offense and a downward adjustment for acceptance of responsibility, Mr. Contreras's total offense level was 21, with a criminal history category of IV.[1] *Id.* at 8, 23.  He thus faced 77–96 months under the Guidelines.  *Id.* at 23.  Mr. Contreras's guideline range was further adjusted downward to 51–70 months under § 5G1.3(b), because he had an undischarged term of imprisonment for a conviction in state court stemming from the same incident for which he was convicted in federal court in the instant case.  Second Addendum to the PSR at 1.

---

[1] The PSR indicates in one instance that Mr. Contreras had a criminal history category of VI.  PSR at 16. Subsequently, in setting out the sentencing guideline range, the PSR states his criminal history category as IV.  *Id.* at 23.

On July 23, 2013, Judge Brack sentenced Mr. Contreras to 51 months. [CR Doc. 30] at 2; [CR Doc. 31] at 2.[2] Mr. Contreras did not file a direct appeal of his conviction or sentence. The instant case is his first motion under § 2255.

### Motions under § 2255 and *Johnson v. United States*

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody" pursuant to a federal conviction may "move the court" "to vacate, set aside or correct the sentence" if it "was imposed in violation of the Constitution or laws of the United States."

In *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), the Supreme Court held that the so-called "residual clause" of the definition of "violent felony" in the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. The ACCA defined "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that —
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized above, have come to be known as the "residual clause."

The Court explained that the residual clause left "grave uncertainty" about "deciding what kind of conduct the 'ordinary case' of a crime involves." *Id.* That is, the residual clause "denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to

---

[2] The Amended Judgment, filed July 25, 2013 [CR Doc. 31], did not alter the sentence imposed.

real-world facts or statutory elements." *Id.* Second, ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2558. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* On that ground it held the residual clause void for vagueness. *Id.*

Soon thereafter, the Court determined that the ruling in *Johnson* was substantive (as opposed to procedural) and, therefore, had "retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Accordingly, *Welch* opened the door for individuals sentenced under the residual clause of the ACCA's violent-felony definition to move to vacate their sentences as unconstitutional under § 2255.

Mr. Contreras, however, was not sentenced under the ACCA, nor does he claim that he was. Instead, he was sentenced under § 2K2.1 of the Sentencing Guidelines, which provides for a sentencing enhancement where the defendant has a prior felony conviction for a "crime of violence" as that term is defined in § 4B1.2(a) of the Guidelines. Like the ACCA, the definition of "crime of violence" under § 4B1.2(a) of the Guidelines includes a residual clause.

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

4

§ 4B1.2(a) (2012) (emphasis added).[3]   The closing words of this definition, italicized above, have come to be known as the "residual clause" of the career offender guideline's definition of crime of violence.

Mr. Contreras argues that because the residual clause in the Guidelines definition of crime of violence mirrors the residual clause in the ACCA's definition of violent felony, the Supreme Court's holding in *Johnson* (i.e., that the ACCA's residual clause is unconstitutionally vague) should apply equally to the residual clause in § 4B1.2(a).  In other words, Mr. Contreras asks the Court to extend *Johnson* beyond the ACCA to the Guidelines.[4]   There is some support for his position.

In *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015), the Tenth Circuit Court of Appeals applied *Johnson* outside of the context of the ACCA to invalidate the residual clause of the career offender guideline.   However, *Madrid* was not a collateral attack on a sentence; it was a direct appeal.   This distinction matters because, in order to rely on *Madrid* for the instant motion under § 2255, Mr. Contreras must show that the rule in *Madrid* is retroactive. There is no *Welch* corollary expressly holding that *Madrid* is or is not retroactive, and the parties

---

[3] Neither Mr. Contreras nor the government explicitly states which edition of the Guidelines they rely on.  The PSR states that the 2012 edition of the Guidelines was used to determine Mr. Contreras's offense level.  PSR at 7. Therefore, I rely on the 2012 edition.

[4] Mr. Contreras did not raise this issue on direct appeal.  Generally, claims that were not raised on direct appeal are procedurally defaulted and cannot be raised in a § 2255 motion unless the defendant can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.  *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994).  However, the government did not raise procedural default as a defense, and I decline to address it sua sponte.  *See Hines v. United States*, 971 F.2d 506, 509 (10th Cir. 1992) (holding that, in a § 2255 motion, the district court may raise procedural default sua sponte); *but see Gray v. Netherland*, 518 U.S. 152, 165–66 (1996) (commenting that, in a § 2254 petition, procedural default is waived if not raised by the government).

dispute whether *Madrid* should apply retroactively.  *Compare* [Doc. 1] at 3, *and* [Doc. 11] at 1–6, *with* [Doc. 8] at 2–11.

These issues—whether *Johnson* should be extended to the career offender guideline and, if so, whether such ruling should apply retroactively—are currently before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544).   Here, the United States moved to stay Mr. Contreras's § 2255 motion pending the Court's ruling in *Beckles*.  [Doc. 3].  Mr. Contreras opposed the stay because he expects to be released before *Beckles* is decided.  [Doc. 4] at 2.  He contends that a stay will prejudice him because, if this Court is persuaded by his motion and resentences him, he will likely be eligible for immediate release.  *See id.*  The United States filed no reply in support of its motion to stay.   It did not dispute that a stay would prejudice Mr. Contreras.  Therefore, on September 21, 2016, I denied the motion to stay.  [Doc. 6].

### Mr. Contreras's conviction for New Mexico robbery qualifies as a crime of violence under the force clause of § 4B1.2 and as enumerated in the commentary accompanying § 4B1.2

Mr. Contreras's sentence was enhanced under the Guidelines based on a prior conviction under the New Mexico robbery statute, NMSA 1978, § 30-16-2.[5]  PSR at 7–8.  His total offense level—and thus the guideline range under which he was sentenced—was calculated according to § 2K2.1 based on a finding that his prior robbery conviction qualified as a "crime of violence," as that term is defined in § 4B1.2 of the Guidelines.  *Id.*

---

[5] At certain points in his motion, Mr. Contreras refers, confusingly, to two separate prior convictions.  He refers to prior convictions for "robbery in violation of NMSA 1978, § 30-3-2(A), and § 30-16-02" as well as "aggravated assault."  [Doc. 1] at 4, 15.  Section 30-16-2 is the New Mexico robbery statute.  Section 30-3-2 is the New Mexico aggravated assault statute.  The PSR refers to a single qualifying prior felony, robbery under § 30-16-2, and it does not list aggravated assault as one of Mr. Contreras's prior convictions.  PSR at 7–8, 9–15.  Additionally, Mr. Contreras's substantive analysis considers only the prior robbery conviction, and the government makes no reference to aggravated assault.  Therefore, I consider in my analysis only the underlying robbery conviction.

Mr. Contreras argues that his robbery conviction could have qualified as a crime of violence only under the residual clause of § 4B1.2(a).  [Doc. 1] at 4.  He argues that the Court should find the residual clause unconstitutionally vague, extending the logic of *Johnson* to his case, and order that he be resentenced.

The United States argues that *Johnson* is not retroactively applicable in Guidelines cases on collateral review.  [Doc. 8] at 2.  The government further argues that, even if the holding in *Johnson* were to be extended to Guidelines cases on collateral review, Mr. Contreras still would not be entitled to resentencing because his prior conviction for robbery qualifies as a crime of violence under § 4B1.2 even absent the unconstitutionally vague residual clause.  *Id.* at 11.  In the main, the government, relying on a recent opinion by the Honorable James O. Browning, United States District Judge, argues that Mr. Contreras's robbery conviction qualifies as a crime of violence because robbery is one of the offenses enumerated in the commentary accompanying § 4B1.2.  *Id.*  The United States argues, in other words, that Mr. Contreras should not be resentenced because he was not sentenced under the residual clause in the first place.

I agree with the United States.  I find that Mr. Contreras's prior robbery conviction qualifies as a crime of violence both under the "force clause" of § 4B1.2(a)(1), and based on the inclusion of robbery as an enumerated offense in the commentary to § 4B1.2.[6]

---

[6] In his reply, Mr. Contreras states that, in another case, the government conceded that New Mexico robbery does not qualify under the force clause of the definition of "crime of violence."  [Doc. 11] at 6.  Mr. Contreras further asserts that, in this case, the government "does not argue" that New Mexico robbery qualifies under the force clause. *Id.*  Therefore, Mr. Contreras contends, the government "has conceded" this argument.  *Id.* at 6.  Mr. Contreras, however, cites no authority for the proposition that a party who takes a certain position on a legal issue in one case subsequently is bound to maintain that position in all future cases in which that issue arises, in perpetuity.  Further, while the government does devote its analysis to an alternate line of argument, it does not abandon the force clause argument altogether.  *See* [Doc. 8] at 13 ("'[T]he Tenth Circuit has already concluded that New Mexico's robbery

**Mr. Contreras's conviction for New Mexico robbery**
**qualifies as a crime of violence under the force clause of § 4B1.2**

Mr. Contreras's conviction under § 30-16-2 "has as an element the use, attempted use, or threatened use of physical force against the person of another"; therefore, it qualifies as a crime of violence pursuant to § 4B1.2(a)(1) of the Guidelines.

The so-called "force clause" of § 4B1.2 provides that an underlying conviction is a crime of violence where it "has as an element the use, attempted use, or threatened use of physical force against the person of another."   § 4B1.2(a)(1).   Interpretations of the definition and scope of the terms used in the definition of crime of violence are questions of federal law.   *See United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009).   In determining whether a statute of conviction qualifies as a violent felony, courts apply the "categorical approach." *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010).   That is, courts look only to "the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction." *Id.* (internal quotation marks omitted).

In 2010, the Supreme Court interpreted the force clause in the definition of "violent felony" under the ACCA. *Johnson v. United States* (*C. Johnson*), 559 U.S. 133, 138–40 (2010). The Supreme Court concluded that the term "physical force," as employed in the force clause of the definition of violent felony under the ACCA, "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis in original).   The Court

statute constitutes a crime of violence under § 4B1.2(a)(1).'" (quoting *United States v. Barela*, No. 15-3550, 2016 WL 5395275, at *3 (D.N.M. Sept. 16, 2016) (alterations in original))).   Therefore, I conduct my own analysis into whether New Mexico robbery is a qualifying crime of violence under the force clause of the Guidelines.

rejected the government's argument that a conviction under Florida's battery law, where the Florida Supreme Court had interpreted the statute's "'actually and intentionally touching'" element to encompass "*any* intentional physical contact, 'no matter how slight,'" satisfied the force clause in the ACCA's definition of violent felony.  *Id.* at 138 (emphasis in original) (quoting *State v. Hearns*, 961 So. 2d 211, 218 (Fla. 2007)).  A force element that can be satisfied by "[t]he most 'nominal contact,'" the Court held, is broader than the "physical force" requirement in the force clause of the ACCA.  *Id.* at 138, 140–41 (quoting *Hearns*, 961 So. 2d at 219).

The Tenth Circuit has extended this interpretation of the "physical force" requirement in the force clause to the definition of crime of violence in § 4B1.2 of the Guidelines.  *United States v. Mitchell*, 653 F. App'x 639, 644 (10th Cir. 2016).  The Tenth Circuit has "'consistently applied the same analysis'" to analogous provisions of the ACCA and the Guidelines where the provisions contain "'virtually identical'" language.  *See id.* at 642 (quoting *Madrid*, 805 F.3d at 1210).  Thus, both ACCA and Guidelines cases are authoritative in interpreting the "physical force" requirement.  *See id.*  The Tenth Circuit has applied the *C. Johnson* standard in determining whether a given state law contains a force element sufficient to satisfy the "physical force" requirement.  Relying on *C. Johnson*, the Tenth Circuit held that the Oklahoma battery law, whose "'force of violence'" element may be satisfied by "'only the slightest touching,'" does not qualify under the force clause.  *United States v. Smith*, 652 F.3d 1244, 1247 (10th Cir. 2011) (quoting *Steele v. State*, 778 P.2d 929, 931 (Okla. Crim. App. 1989)).  On the other hand, the Tenth Circuit also concluded that a conviction under New Mexico's "apprehension causing"

aggravated assault statute—which requires for conviction proof of "threaten[ing] or engag[ing] in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery"—qualified as a violent felony under the force clause. *Ramon Silva*, 608 F.3d at 670–71 (internal quotation marks omitted). The court held that the New Mexico statute contemplated sufficient force to qualify as a violent felony under the ACCA in part because, even though it did not require actual physical contact or violence against the victim, the conduct that it criminalized "'could always lead to . . . substantial and violent contact, and thus it would always include as an element' the threatened use of violent force." *Id.* at 672 (quoting *United States v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005)). Further, the conduct "'could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force.'" *Id.* (quoting *United States v. Dominguez*, 479 F.3d 345, 349 (5th Cir. 2007)); *see also Mitchell*, 653 F. App'x at 645 (holding that an Oklahoma law criminalizing the "intentional attempt or threat to commit violence on another . . . with a weapon capable of causing great bodily harm" satisfies the force clause and is a qualifying crime of violence).

      Mr. Contreras was convicted under New Mexico's robbery statute. The statute provides:

> Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.

> Whoever commits robbery is guilty of a third degree felony.

> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

NMSA 1978, § 30-16-2.  The parties agree that Mr. Contreras was convicted of third degree robbery.  *See* [Doc. 1] at 5; [Doc. 8] at 12.

Comparing § 30-16-2, as that clause has been interpreted by New Mexico courts, with the force clause of § 4B1.2(a), as that clause has been interpreted by the Supreme Court and the Tenth Circuit, I find that the "force or violence" requirement of the New Mexico robbery statute satisfies the "physical force" requirement of the Guidelines' force clause.  Therefore, I find that the New Mexico robbery statute qualifies as a crime of violence.

The New Mexico robbery statute contains a force element:  it requires that the theft be committed "by use or threatened use of force or violence."  § 30-16-2.  Indeed, "[t]he use of force, violence, or intimidation is an essential element of robbery."  *State v. Lewis*, 1993-NMCA-165, ¶ 8, 116 N.M. 849, 851.  Further, the New Mexico statute requires that the force be exercised against the person of another.  *State v. Bernal*, 2006-NMSC-050, ¶ 28, 140 N.M. 644, 651 ("Robbery is not merely a property crime, but a crime against a person.").

Mr. Contreras does not suggest that the New Mexico robbery statute lacks an element requiring the use of force against the person of another; rather, he contends that the degree of force required for a person to be convicted under the robbery statute is broader than the degree of force required to satisfy the "physical force" requirement of § 4B1.2(a)(1).  Mr. Contreras asserts that, to commit robbery in New Mexico, a person "need only use or threaten to use minimal force."  [Doc. 1] at 5.  He largely hangs his argument on language from New Mexico case law stating that "'[t]he amount or degree of force is not the determinative factor'" or is "'immaterial.'"  *Id.* at 6 (quoting *State v. Martinez*, 1973-NMCA-120, ¶ 4, 85 N.M. 468, 469;

UJI 14-1620 NMRA, Committee Commentary).  He further notes, "[t]he force just has to be enough to overcome the 'resistance of attachment.'"  *Id.* (quoting *State v. Curley*, 1997-NMCA-038, ¶ 10, 123 N.M. 295, 297).

As an initial matter, the language on which Mr. Contreras relies refers to the requirement that the force or violence be employed in the act of taking away the property.  "The use or threatened use of force . . . . 'must be the lever by which the thing of value is separated' from the victim."  *Martinez*, 1973-NMCA-120, ¶ 4 (quoting *State v. Baca*, 1971-NMCA-142, ¶ 5, 83 N.M. 184, 184).  In *Martinez*, for example, the court did not need to consider the force employed during a fight between the defendant and victim that followed the theft in question because "the ripping of the [victim's] jacket pocket in grabbing the money, and knocking the victim against the railing, was a showing of sufficient use of force to sustain the conviction."  *Id.* ¶ 5.  It is not that the court did not consider the degree of force used by the defendant; rather, in stating that the degree of force was not the "determinative factor," the court meant that it must evaluate *when* the force or violence was deployed by the defendant.  *Id.* ¶¶ 4–5; *see also Lewis*, 1993-NMCA-165, ¶ 12 (the defendant's use of a weapon to "hold [the] victim at bay as he escaped" was not sufficient to satisfy the force requirement of the New Mexico robbery statute because the money itself had been "removed and separated from his person by stealth").

More to the point, contrary to Mr. Contreras's assertions, the New Mexico robbery statute requires an evaluation of whether the degree of force employed in the commission of the theft satisfied the force element of the statute.  *See State v. Clokey*, 1976-NMSC-035, ¶ 3, 89 N.M. 453, 453 ("The question of whether or not the snatching of the purse from the victim was

accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion.").  The New Mexico Court of Appeals has made clear that de minimis force does not suffice to sustain a robbery conviction:  "when no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery."  *Curley*, 1997-NMCA-038, ¶ 6.  Theft constitutes robbery only where it is accomplished using "force necessary to overcome any resistance."  *Id.* ¶ 18.  The *Curley* court concluded, therefore, that the defendant was entitled to the lesser included offense of larceny because a jury could have found that he took a purse by surprise from a victim who was not resisting.  *Id.*

The force requirement of New Mexico robbery rests on the principle that robbery is not merely a property crime, it is a crime against a person.  This distinguishes it from larceny.  *Id.* ¶ 11.  Courts should construe the "'resistance of attachment'" requirement "in light of the idea that robbery is an offense against the person, and something about that offense should reflect the increased danger to the person that robbery involves over the offense of larceny."  *Id.*  In determining whether the force requirement of robbery has been satisfied, courts should not focus exclusively on the "[s]ubtle differences in the amount of force used."  *Id.* ¶ 13.  The "reason for the distinction" between robbery and larceny—and the increased punishment—"is the increased danger to the person."  *Id.*  Therefore, "an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was designed to alleviate."  *Id.*  In other words, the force used to commit a robbery is that which puts the victim on notice of the theft and creates the possibility of a dangerous and violent confrontation.

13

The Supreme Court of New Mexico has corroborated this view of the force element of robbery. *See State v. Bernal*, 2006-NMSC-050, ¶¶ 27–28, 140 N.M. 644, 651. As the Court in *Bernal* found, "robbery is a crime designed to punish the use of violence" and "to protect citizens from violence." *Id.* (holding that the Double Jeopardy Clause is not offended by allowing, for a single act, separate charges for each victim "against whom violence or the threat of violence is separately used"). The rationale behind the force element of New Mexico robbery tracks that identified by the Tenth Circuit in defining a "violent felony" in *Ramon Silva*—the prohibited conduct constitutes a violent felony because it "could always lead to . . . substantial and violent contact." 608 F.3d at 672.

Mr. Contreras cites to several cases to support his position that the New Mexico robbery statute requires only a minimal degree of force to be completed, but they are unpersuasive. He cites to *Curley* for the proposition that snatching an article of clothing, such as a pin, with just the amount of force required to remove it constitutes robbery; he subsequently cites the same case as holding that shoving a victim's shoulder suffices for robbery. [Doc. 1] at 6–7 (citing *Curley*, 1997-NMCA-038). The thrust of the holding in *Curley* is described *supra*; in finding that the defendant was entitled to an instruction on larceny, the court held that the force requirement hinged on the degree of force required to overcome resistance. 1997-NMCA-038, ¶ 18. Further, the court in *Curley* explicitly stated that applying only the force necessary to remove the item does not satisfy the force requirement of New Mexico robbery. *Id.* ¶ 6.

Mr. Contreras also cites a number of cases for the proposition that a pickpocket's "jostling" of a victim in order to divert the victim's attention constitutes the force necessary to

commit robbery.  [Doc. 1] at 6–7.  In fact, jostling a victim to divert his or her attention runs contrary to the definition of robbery that New Mexico courts set out in *Curley* and *Bernal*.  As those cases make clear, the distinguishing feature of robbery under New Mexico law—as opposed to mere larceny—is the use of force necessary to overcome any resistance; where there is no possibility of  resistance (as in pickpocket cases), there is no robbery.[7]  *See Curley*, 1997-NMCA-038, ¶ 18.  Furthermore, neither of the New Mexico cases Mr. Contreras cites to support this point involved mere "jostling" to divert the victim's attention.  In *State v. Martinez*, the defendant ripped the victim's pocket and knocked the victim against a railing.  1973-NMCA-120, ¶ 5.  And in *State v. Segura*, the defendant grabbed the victim's bag and, while the victim held on to the bag as they engaged in an altercation, the victim lost her balance and fell to the ground.  1970-NMCA-066, ¶¶ 2–3, 81 N.M. 673, 673.  While the court noted in *Segura* that "evidence of jostling or causing the victim to fall" may constitute sufficient force for robbery, it did so in the context of a case in which the victim resisted and a physical confrontation ensued.

Finally, the other New Mexico cases Mr. Contreras cites also demonstrate force or violence used in the defendants' confrontations with the victims.  *See* [Doc. 1] at 7; *State v. Verdugo*, 2007-NMCA-095, ¶ 26, 142 N.M. 267, 275 (holding, in a single sentence without further analysis, sufficient evidence of force existed where the defendant attempted to grab the victim's purse from around her arm and the victim "struggled to retain control" until the purse strap broke); *State v. Pitts*, 1985-NMCA-045, ¶ 16, 102 N.M. 747, 749 (the defendant grabbed the victim and locked her into a cell).

---

[7] Mr. Contreras also cites to non-binding authority on this point.  *See* [Doc. 1] at 6–7.  The cases cited run counter to New Mexico law on this point, and I find them unpersuasive.

Though it predates the Supreme Court's decision in *C. Johnson*, the Tenth Circuit has also concluded that the New Mexico robbery statute is a "violent felony" under the ACCA.[8] *United States v. Lujan*, 9 F.3d 890, 891–92 (10th Cir. 1993). Two recent decisions in this District have come to similar conclusions. Relying heavily on the Tenth Circuit's decision in *Lujan*, Judge Browning held that New Mexico's robbery statute constitutes a crime of violence under § 4B1.2. *United States v. Barela*, No. 15-3550, 2016 WL 5395275, at *3 (D.N.M. Sept. 16, 2016). Additionally, the Honorable M. Christina Armijo, Chief United States District Judge, recently held that New Mexico robbery qualifies as a predicate conviction under the force clause of 18 U.S.C. § 3559(c)(2)(F)(ii); that provision sets out the definition of "serious violent felony." *United States v. Contreras*, [Doc. 3] at 5 in 16-cv-0703 MCA/CG (D.N.M. July 14, 2016). In arriving at her decision, Chief Judge Armijo noted that "[t]he New Mexico appellate courts have consistently stated that the use or threatened use of force is an essential element of the offense of robbery." *Id.*

Mr. Contreras cites to a number of cases outside this circuit holding that various state statutes, which he alleges are similar to the New Mexico robbery statute, do not meet the "physical force" requirement of § 4B1.2(a)(1). [Doc. 1] at 8–9. Again, I am not persuaded. Nearly all the cases to which Mr. Contreras cites evaluate a state law, the force element of which is satisfied by the use of de minimis force. *Id.* (citing *United States v. Castro-Vazquez*, 802 F.3d 28, 37–38 (1st Cir. 2015) (robbery statute requires only "the slightest use of force"); *United States v. Dominguez-Maroyoqui*, 748 F.3d 918 (9th Cir. 2014) (prior assault conviction

---

[8] Mr. Contreras contends that *Lujan* does not control the outcome here. [Doc. 1] at 10–12. I do not rest my analysis on *Lujan*.

16

did not qualify as a crime of violence under the force clause where conviction of assault could be obtained when the defendant "use[d] *any force whatsoever* against a federal officer") (emphasis in original); *United States v. Hollins*, 514 F. App'x 264, 267–68 (3d Cir. 2013) (Pennsylvania robbery statute was satisfied by "any amount of force applied to a person while committing a theft") (internal quotation marks omitted); *In re Sealed Case*, 548 F.3d 1085, 1090 (D.C. Cir. 2008) (robbery statute could be satisfied by using "the minimal level of force necessary to obtain property by sudden or stealthy seizure or snatching") (internal quotation marks omitted); *United States v. Moncrieffe*, 2016 WL 913391, at *16–19 (E.D.N.Y. Mar. 10, 2016) (New York robbery statute under which "any amount of force" satisfies the force element); *United States v. Bell*, 2016 WL 344749, at *9–10 (N.D. Cal. Jan. 28, 2016) (robbery statute required only as much force as required to snatch an item from the victim or the victim's clothes); *United States v. Litzy*, 2015 WL 5895199, at *4–5 (S.D.W. Va. Oct. 8, 2015) (force element of state statute could be satisfied "by a mere uninvited touch")).

Mr. Contreras does cite to two circuits that have held that state statutes requiring comparable or more force than is required in the New Mexico robbery statute do not satisfy the "physical force" standard. [Doc. 1] at 9 (citing *United States v. Bilal*, 610 F. App'x 569, 569–70 (6th Cir. 2015) (assessing Ohio aggravated attempted robbery statute); *United States v. Montes-Flores*, 736 F.3d 357, 368–39 (4th Cir. 2013) (assessing South Carolina assault and battery of a high and aggravated nature); *United States v. Carmichael*, 408 F. App'x 769, 770 (4th Cir. 2011) (assessing North Carolina common law robbery)). As to the Ohio aggravated attempted robbery statute, however, as discussed *supra*, the Tenth Circuit has already reached a

contrary opinion with respect to a similar statute.   *Ramon Silva*, 608 F.3d at 670–71 (New Mexico's "apprehension causing" aggravated assault statute contemplated sufficient force to qualify as a violent felony under the ACCA, even though it did not require actual physical contact or violence against the victim).   Furthermore, that decision is unpublished, and, in any event, this Court is not bound by decisions from the Sixth or Fourth Circuits.

Given the Tenth Circuit case law on this issue, the recent decisions in this District, and my own analysis, I am not persuaded by Mr. Contreras's argument that the New Mexico robbery statute can be satisfied by a degree of force less than the "physical force" requirement of § 4B1.2(a)(1).   I find that New Mexico robbery qualifies as a crime of violence under the force clause of that provision.

### Mr. Contreras's conviction also qualifies as an enumerated crime of violence under the commentary to § 4B1.2

The government argues that Mr. Contreras's prior conviction for robbery under § 30-16-2 qualifies as a crime of violence independent of the residual clause, because robbery is among the offenses enumerated in the Guidelines' commentary.   [Doc. 8] at 12–14.   The government largely bases its argument on Judge Browning's opinion in *Barela*, which itself relied on the Tenth Circuit's opinion in *Madrid*, 805 F.3d 1204, to reach the same conclusion.   [Doc. 8] at 12–14.   Drawing on *Barela* and *Madrid*, the government asserts that the commentary accompanying § 4B1.2 enumerates several crimes that constitute "crimes of violence" and that the commentary "is authoritative" because it is not inconsistent with the guideline.   *Id.* at 13–14 (internal quotation marks omitted).   The government further argues that New Mexico's robbery statute

adheres to the generic definition of robbery.  *Id.*  Therefore, it concludes, New Mexico robbery is a qualifying crime of violence under the Guidelines.  *Id.* at 14.

Mr. Contreras challenges this interpretation.  While acknowledging that robbery is listed in the commentary to § 4B1.2, Mr. Contreras contends that the offenses enumerated in the commentary do not provide independent bases on which an underlying offense can qualify as a crime of violence; rather, Mr. Contreras argues, the commentary is authoritative only "if it interprets a guideline's text and is not inconsistent with that text."  [Doc. 1] at 14; [Doc. 11] at 9.  Mr. Contreras asserts that the additional offenses enumerated in the commentary could only be interpreting the now-unconstitutional residual clause.  [Doc. 1] at 12.  He contends that the Tenth Circuit did not actually decide in *Madrid* whether the enumerated crimes in the commentary may provide independent bases on which a crime could qualify as a "crime of violence," and he argues that *Barela* erroneously relied on *Madrid* for this proposition. [Doc. 11] at 8–9.

The commentary accompanying § 4B1.2 states the following:  "For purposes of this guideline— . . . .  'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and burglary of a dwelling."  § 4B1.2 cmt., n.1 (emphasis added).  As both parties acknowledge, Guidelines commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."  *Stinson v. United States*, 508 U.S. 36, 38 (1993).

In *Madrid*, the Tenth Circuit considered whether the defendant's prior conviction for statutory rape qualified as a crime of violence under the Guidelines.  805 F.3d at 1206.  The court instructed that the prior offense would qualify as a crime of violence if:  "(1) it 'has as an element the use, attempted use, or threatened use of physical force against the person of another'; [or] (2) it is one of the offenses enumerated in the Guidelines or accompanying commentary as a crime of violence."  *Id.* at 1207 (quoting § 4B1.2(a)).  The court first concluded that the statute of conviction did not fall under the force clause.  *Id.* at 1207–08.  It then analyzed whether the underlying statutory rape law qualified under one of the crimes enumerated in the commentary to § 4B1.2, "forcible sex offenses."  *Id.* at 1208.  The court ultimately concluded that the Texas law encompasses non-forcible acts and thus is broader than the enumerated offense.  *Id.* at 1208–09. The court went on to conclude that the underlying offense could not qualify under the residual clause because that clause was unconstitutionally vague, following from *Johnson*.  *Id.* at 1210.

 In other words, the Tenth Circuit in *Madrid* embarked on an analysis as to whether an underlying conviction matched the generic definition of an offense enumerated in the Guidelines' commentary.  Mr. Contreras urges that the court in *Madrid* never actually decided whether the commentary could provide an independent basis for a prior conviction to qualify as a crime of violence because it concluded that the statute of conviction was not substantially similar to the enumerated offense.  [Doc. 11] at 8–9.  True, the Tenth Circuit did not ultimately conclude that the Texas law was a qualifying prior offense; still, it set out a rule specifically acknowledging the offenses enumerated in the commentary and conducted a robust analysis— the same analysis that courts deploy in comparing an underlying statute against the offenses

enumerated in § 4B1.2(a)(2)—in making its determination.  805 F.3d at 1208–09.  The court gave no indication that a further level of analysis would be required.  It noted simply that "[b]ecause the statute under which Madrid was convicted does not necessarily require force or coercion, we hold that Madrid's conviction does not qualify as a forcible sex offense."  *Id.* at 1210.  The only logical conclusion to be drawn from the *Madrid* court's analysis is the one Judge Browning drew in *Barela*: underlying convictions may qualify as crimes of violence based on the crimes enumerated in the commentary to § 4B1.2.

Mr. Contreras also contends that in *United States v. Armijo*, 651 F.3d 1226 (10th Cir. 2011), a case decided before *Madrid*, the Tenth Circuit came to a contrary decision regarding the impact of the commentary.  [Doc. 11] at 9–10.  In that case, the court held that the crime of manslaughter, enumerated in the Guidelines commentary, does not encompass versions of manslaughter that have a mens rea of recklessness—offenses under § 4B1.2 instead "only reach[] purposeful or intentional behavior."  *Armijo*, 651 F.3d at 1236.  The court's decision in *Armijo*, however, only affirms the rule set out by the Supreme Court in *Stinson*—commentary is not valid if it is inconsistent with the guideline.  *See* 508 U.S. at 38.

Robbery is an offense enumerated in the commentary to the Guidelines.  The New Mexico robbery statute qualifies as an enumerated crime of violence if its elements align with the generic definition of robbery—if they are the same as, or narrower than, those of the generic offense.  *See Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016).  Generic robbery is defined as the "trespassory taking and carrying away of the personal property of another with the intent to steal it, where that property is taken from the person or presence of the other, and the

taking is accomplished by means of force or putting in fear." *Barela*, 2016 WL 5395275, at *2. The government asserts that New Mexico robbery adheres to the generic, common-law definition of robbery. [Doc. 8] at 13. Mr. Contreras does not dispute this assertion, and so I find that he waives any objection to it. I find that New Mexico robbery qualifies as the enumerated offense of robbery in the commentary accompanying § 4B1.2. Nor is there a realistic probability that the New Mexico courts would interpret robbery in a manner that would sever this correspondence in the future. New Mexico's robbery statute, NMSA 1978, § 30-16-2, qualifies as an enumerated crime of violence under the Guidelines' commentary. Accordingly, I find that Mr. Contreras's sentence was enhanced under the Guidelines' commentary and not the residual clause.

### Conclusion

**IT IS THEREFORE RECOMMENDED** that Defendant Contreras's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 [CR Doc. 34; CV Doc. 1] be **DENIED** and that case No. 16-cv-0671 RB/SMV be **DISMISSED with prejudice**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1.  If no objections are filed, no appellate review will be allowed.**

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

22